[No. 11101. Department One. October 8, 1913.]

L. MAZETTI et al., Appellants, v. ARMOUR & COMPANY et al., Respondents.[1]

FOOD—IMPLIED WARRANTY—ORIGINAL PACKAGES FOR USE OF ULTI-MATE CONSUMER—LIABILITY TO RETAILER. There is an implied war-ranty of food products put up for the use of the ultimate consumer in original packages which are sealed and not open to inspection; and liability thereon is not limited to the ultimate consumer or de-pendent upon privity of contract, but extends to a retailer who was damaged by loss of trade and reputation through the fault or breach of duty of the manufacturer.

FOOD—IMPLIED WARRANTY—NEGLIGENCE—LIABILITY TO RETAILER. There is an exception to the rule that a manufacturer is not liable on an implied or express warranty to any person other than his im-mediate vendee, where food products were put up in sealed packages for the use of the ultimate consumer, who alone could discover the unfitness of the contents, since right and reason require that any party injured may recover of the first offender without resorting to a circumlocution of actions against intervening agents.

COURTS—RULE OF DECISIONS—EXCEPTIONS. The courts will, if free from statutory restraint, declare an exception to a rule that does not square with justice, where the case is not an isolated instance, but general in its character.

FOOD—NEGLIGENCE—VIOLATION OF PURE FOOD LAW—PRESUMPTIONS. The presumption of negligence from a violation of the pure food law is available to a retailer of sealed packages who depends upon estab-lished brands to sustain his reputation as a dealer; since the pro-duct was intended for the use of all who handle it in trade as well as those who consume it.

Appeal from a judgment of the superior court for King county, Myers, J., entered November 20, 1912, dismissing an action in tort, on sustaining a demurrer to the complaint. Reversed.

*James L. Crotty* and *Thos. R. Horner*, for appellants.

*Peters & Powell*, for respondents.

[1]Reported in 135 Pac. 633.

CHADWICK, J.—The complaint alleges that the plaintiffs were operating a profitable restaurant in the city of Seattle, and dealing with the general public as their patrons; that defendant Armour & Company is engaged in the business of manufacturing, and selling to the public generally, meats and products to be used as food; that it maintains a place of business in Seattle, Washington, from which it sells and distributes its goods, representing and holding out to the general public that its goods are pure, wholesome and fit food for human beings; that on June 16, 1912, plaintiffs, in the usual course and conduct of their business, purchased from the Seattle Grocery Company a carton of cooked tongue, prepared and ready to be used for food without further cooking or labor; that such package had been manufactured and prepared by defendant Armour & Company; that the carton or container bore its name, and that it was purchased to be sold to plaintiffs' customers; that, in making such purchase, plaintiffs relied upon the representations of Armour & Company that said food was pure and wholesome and fit for food; that Armour & Company were guilty of negligence in manufacturing and preparing the foods purchased, in that in the center of the carton was a foul, filthy, nauseating and poisonous substance; that, in the due course of trade, plaintiffs served to one of their patrons a portion of the tongue; that the patron ate of it; that he then and there became sick and nauseated, and did then and there, in the presence of other persons, publicly expose and denounce the service to him of such foul and poisonous food; that the incident became known to the public generally; that plaintiffs had no knowledge or means of knowing the character of the food served; that its condition could not be discovered until it was served for use; all to the damage of the plaintiffs, etc., for loss of reputation, business, and lost profits during the life of their lease. Defendants demurred to the complaint. The demurrer of Armour & Company was sustained, and plaintiffs have appealed.

It has been accepted as a general rule that a manufacturer is not liable to any person other than his immediate vendee; that the action is necessarily one upon an implied or express warranty, and that without privity of contract no suit can be maintained; that each purchaser must resort to his immediate vendor. To this rule, certain exceptions have been recognized: (1) Where the thing causing the injury is of a noxious or dangerous kind; (2) where the defendant has been guilty of fraud or deceit in passing off the article; (3) where the defendant has been negligent in some respect with reference to the sale or construction of a thing not imminently dangerous.

Within one of these exceptions, is to be found the reason for holding the manufacturer of patent or proprietary medicines to answer at the suit of the ultimate consumer. Direct actions are allowed in such cases because the manufacture of medicines is generally shrouded in mystery, and sometimes, if not generally, they contain poisons which may produce injurious results. They are prepared by the manufacturer for sale and distribution to the general public, and one purchasing them has a right to rely upon the implied obligation of the manufacturer that he will not use ingredients which, if taken in prescribed doses, will bring harmful results. Reference may be had to the following cases which sustain, and in which many other cases are cited which notice, this exception. *Thomas v. Winchester*, 6 N. Y. 397, 57 Am. Dec. 455; *Blood Balm Co. v. Cooper*, 83 Ga. 457, 10 S. E. 118, 20 Am. St. 324, 5 L. R. A. 612; *Weiser v. Holzman*, 33 Wash. 87, 73 Pac. 797, 99 Am. St. 932.

Another exception—the doctrine is comparatively recent—is referable to the modern method of preparing food for use by the consumer, and the more general and ever increasing use of prepared food products. The following are among the more recent cases holding that the ultimate consumer may bring his action direct against the manufacturer: *Meshbesher v. Channellene Oil & Mfg. Co.*, 107 Minn. 104,

119 N. W. 428, 131 Am. St. 441; *Tomlinson v. Armour &
Co.*, 75 N. J. L. 748, 70 Atl. 314, 19 L. R. A. (N. S.) 923;
*Salmon v. Libby, McNeill & Libby*, 219 Ill. 421, 76 N. E.
573; *Haley v. Swift & Co.*, 152 Wis. 570, 140 N. W. 292;
*Watson v. Augusta Brewing Co.*, 124 Ga. 121, 52 S. E. 152,
110 Am. St. 157, 1 L. R. A. (N. S.) 1178; *Ketterer v. Ar-
mour & Co.*, 200 Fed. 322.

The contrary is held in the case of *Nelson v. Armour Pack-
ing Co.*, 76 Ark. 352, 90 S. W. 288, 6 Am. & Eng. Ann.
Cases 237. This case, although well reasoned along the lines
of those cases which hold that the rule of *caveat emptor* ap-
plies, is not in touch with the modern drift of authority.

Some of the cases hold that the action is for breach of
warranty; others, that it is to be sustained upon the ground
of negligence. A few courts have attributed the growth of
this exception to the general public policy as declared in the
pure food laws (*Meshbesher v. Channellene Oil & Mfg. Co.*,
*supra*); while others say that the liability for furnishing pro-
visions which endanger human life rests upon the same
grounds as the manufacturing of patent or proprietary medi-
cine. *Bishop v. Weber*, 139 Mass. 411, 1 N. E. 154, 52 Am.
Rep. 715; *Haley v. Swift & Co.*, *Tomlinson v. Armour & Co.*,
*Meshbesher v. Channellene Oil & Mfg. Co.*, *Salmon v. Libby,
McNeill & Libby*, *Watson v. Augusta Brewing Co.*, and
*Ketterer v. Armour & Co.*, *supra*.

In the case of *Weiser v. Holzman*, this court said:

"The rule does not rest upon any principle of contract, or
contractual relation existing between the person delivering
the article and the person injured, for there is no contract or
contractual relation between them. It rests on the principle
that the original act of delivering the article is wrongful,
and that every one is responsible for the natural consequences
of his wrongful acts."

Although the cases differ in their reasoning, all agree that
there is a liability in such cases irrespective of any privity
of contract in the sense of immediate contract between the

parties. Indeed, we understand that respondent does not deny that the ultimate consumer, the person who ate the unfit food, would be denied a right of recovery under modern authority; but it is strenuously contended that such actions are sustained because the consumer has been injured in health and comfort; that the exception should not be carried to the extent of allowing a retailer of the goods to sue direct and recover for injury to his business and loss of reputation; that in such cases there must still be privity of contract. It seems that the test should not rest in finding the plaintiff's damage in health or business, but in answering the question whether there has been a damage which may be justly attributed to the negligence or a breach of duty on the part of the one who had power and whose duty it was to prevent the wrong. °

Counsel on either side have been zealous in searching the books, but only one case is submitted that goes directly to the right of the retailer or middleman to sue in the first instance. *Neiman v. Channellene Oil & Mfg. Co.*, 112 Minn. 11, 127 N. W. 394, 140 Am. St. 458. The right to recover for loss of trade consequent upon the selling of impure food was sustained, the court saying,

"A company which advertises itself as a manufacturer of pure articles of food must be deemed to have knowledge of the contents of the articles offered for sale."

The court held to the doctrine of implied warranty. The suit was brought by the retailer against his immediate vendor, so that we still have to meet the question of whether the retailer who has lost his trade can sue over the head of his immediate vendor, or join him with the manufacturer, as in this case. In the light of modern conditions, we see no reason why he should not. He has been damaged. He, and all others who in the course of trade handled the unwholesome goods, purchased them relying upon the name and reputation of the manufacturer. The goods were designed for ultimate consumption by an individual patron and packed to facilitate

and make convenient such resales as might be made pending ultimate consumption. Every tradesman, whether wholesaler or retailer, is in a sense a consumer, for he buys to resell. In a way he risks his reputation. He stakes it upon either an express warranty, as printed on the package, or an implied warranty that the goods are wholesome and fit for food. He is injured by the fault or a breach of duty of the manufacturer; for his immediate vendor, like himself, has no way to test every sealed package. "Remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales." The obligation of the manufacturer should not be based alone on privity of contract. It should rest as was once said, upon "the demands of social justice!" *Ketterer v. Armour & Co.*, *supra*.

"We may judicially recognize that the contents are sealed up, not open to the inspection or test, either of the retailer, or of the customer, until they are opened for use; and not then susceptible to practical test, except the test of eating. When the manufacturer puts the goods upon the market in this form for sale and consumption he, in effect, represents to each purchaser that the contents of the can are suited to the purpose for which it is sold, the same as if an express representation to that effect were imprinted upon a label. Under these circumstances, the fundamental condition upon which the common-law doctrine of *caveat emptor* is based—that the buyer should 'look out for himself'—is conspicuously absent." *Tomlinson v. Armour & Co.*, 19 L. R. A. (N. S.) 923.

In *Pantaze v. West* (Ala. App.), 61 South. 42, the suit was brought against the retailer. In discussing the obligations of the retailer, the court treats him as a consumer within the law, saying:

"The fact was established without controversy that the defendant was the keeper of a public eating place, engaged in the business of serving food to his customers, the public, and, being thus engaged and holding himself out as a public purveyor, he was bound to use due care to see that the foodstuffs served at his place of business to his customers were fit for human consumption and could be partaken of without

causing sickness or endangering human life or health because of their unwholesome and deleterious condition; and, for any negligence in this particular in failing to observe this duty which proximately resulted in injury to one of the patrons of the place, the defendant would be responsible."

Now, under all authority, the immediate vendor would be liable upon one theory or another, to the consumer. This being so, it should not be held that the vendor could not sue the manufacturer except to recoup against a judgment. He might thus be left without remedy. In denying the right to sue an immediate vendor, Spear, J., in *Bigelow v. Maine Cent. R. Co.* (Me.), 85 Atl. 396, observed the wonderful discoveries of the past century and the amazing progress in perfecting known devices. He recalls the boast of the common law that it was able to adjust itself to the inevitable vicissitudes and changes that occur in the development of human affairs.

"The principles of the common law have adapted themselves so aptly as to render almost imperceptible the radical transitions that have taken place. Of little less importance than the appearance of the great achievements referred to is the establishment and development of the canning industry in this country and in other parts of the world. It may be said that the art of canning, if not invented within the last century, has, at least, assumed the vast proportions which it has now attained, within a comparatively few years. It involves a unique and peculiar method of distributing, for domestic and foreign use, almost every product known to the art of husbandry. The wholesaler, the retailer, and the user of these goods, whether in the capacity of caterer, seller or host, sustain an entirely different duty, respecting a knowledge of their contents and quality, than prevails with regard to knowing the quality of those food products, which are open to the inspection of the seller or victualer. With reference to these it may well be considered, as has been held, that having an opportunity to investigate, and thereby to know the quality of their merchandise, they are charged with a responsibility amounting to a practical guaranty. The early rules of law were formulated upon the theory that

the provision dealer and the victualer, having an opportunity to observe and inspect the appearance and quality of the food products they offered to the public, were accordingly charged with knowledge of their imperfections. *Winsor v. Lombard*, 18 Pick. (Mass.) 57; *Bishop v. Webber*, 139 Mass. 411, 1 N. E. 154, 52 Am. Rep. 715. But upon the state of facts in the case at bar, a situation arises that cannot in the practical conduct of the canning business fall within these rules. No knowledge of the original or present contents of a perfect appearing can is possible in the practical use of canned products. They cannot be chemically analyzed every time they are used. Accordingly, the reason for the rule having ceased, a new rule should be applied to the sale and use of canned goods that will more nearly harmonize with what is rational and just."

To the old rule that a manufacturer is not liable to third persons who have no contractual relations with him, for negligence in the manufacture of an article, should be added another exception—not one arbitrarily worked by the courts —but arising, as did the three to which we have heretofore alluded, from the changing conditions of society. An exception to a rule will be declared by courts when the case is not an isolated instance, but general in its character and the existing rule does not square with justice. Under such circumstances, a court will, if free from the restraint of some statute, declare a rule that will meet the full intendment of the law. No case has been cited that is squarely in point with the instant case, but there is enough in the adjudged cases to warrant us in our conclusion.

The facts stated in the complaint are admitted by demurrer. Plaintiffs have been injured. No other person or firm had an opportunity to check the offensive package after it was sealed and sent on its way. Right and reason demand that any party injured should have a right of recovery against the first offender without resorting to that circumlocution of action against intervening agents—a doubtful right at best (*Bigelow v. Maine Cent. R. Co., supra*)— which is demanded where the product as well as the market

is open and the rule of *caveat emptor* should in justice apply.

Plaintiffs' argument is also based on the pure food law. It is contended that the negligence of defendant is presumed if a violation of the pure food law be shown. This is admitted as a general proposition by defendant, but it says that the rule applies only where the statute was intended for the benefit of the party who brings the suit; that the pure food laws are intended for the benefit of the consumer alone.

This opinion is already too long drawn out, and we are not disposed to go into this phase of the case, except to say that it seems to us that the plaintiffs would not be barred by the argument made by defendant. The consumer purchases prepared food products to sustain life and health. The retailer purchases the same products, depending upon established brands to sustain his reputation as a dealer in clean and wholesome food. We would be disposed to hold on this question that, where sealed packages are put out and it is made to appear that the fault, if any, is that of the manufacturer, the product was intended for the use of all those who handle it in trade as well as those who consume it.

Our holding is that, in the absence of an express warranty of quality, a manufacturer of food products under modern conditions impliedly warrants his goods when dispensed in original packages, and that such warranty is available to all who may be damaged by reason of their use in the legitimate channels of trade.

We regard this case, in so far as the dealer is permitted to sue the manufacturer, as one of first impression. We think the complaint states a cause of action. If there is no authority for the remedy, "it is high time for such an authority." *Ketterer v. Armour & Co., supra.*

The judgment is reversed, and the cause remanded with instructions to overrule the demurrer.

CROW, C. J., GOSE, and PARKER, JJ., concur.