[No. 13235.  Department One.  September 26, 1916.]

CHARLES FLESSHER, *Respondent*, v. CARSTENS PACKING
COMPANY, *Appellant*.[1]

FOOD—SALES—IMPLIED WARRANTY — ACTIONS — PLEADING — NEGLI-
GENCE.  An action on the case as for a tort lies for breach of the
implied warranty of the wholesomeness of food sold by a retailer for
immediate human consumption; and in a complaint pleading the
facts, it is not necessary to allege the legal conclusion of negligence.

SAME—PLEADING SCIENTER.  In an action for breach of the im-
plied warranty of the wholesomeness of food sold for immediate
human consumption by a retailer who was also the manufacturer, it
is not necessary to allege or prove scienter, regardless of whether the
action be called one on warranty or of negligence.

SAME—LIABILITY FOR INJURIES—QUESTION FOR JURY.  The liability
of a retailer and manufacturer of dried beef sold for immediate
human consumption, is a question for the jury, where there was
evidence that plaintiff and others eating meat cut from the same
piece soon after purchasing it became ill and physicians testified
that plaintiff's illness was, in their opinion, caused by the unwhole-
some condition of the meat, notwithstanding the testimony of chem-
ists that other parts cut from the same piece were not infected.

APPEAL—REVIEW—EVIDENCE—WAIVER OF ERROR.  Error cannot be
predicated upon the failure of a long hypothetical question to in-
clude all matters subsequently adduced by appellant where appellant
had opportunity to cross-examine and include such elements.

EVIDENCE—OPINION EVIDENCE—HEARSAY.  The opinion evidence of
physicians as to the cause of plaintiff's sickness is not objectionable
as hearsay because based in part upon the history of the case de-
tailed to them by the patient, where it was necessary to take into
consideration both the subjective and objective symptoms.

APPEAL — REVIEW — INSTRUCTIONS — REQUESTS.  Error cannot be
based upon the refusal of requested instructions sufficiently covered
in the general charge.

DAMAGES—PERSONAL INJURIES—EXCESSIVE DAMAGES.  A verdict for
$3,600 for damages resulting from eating unwholesome meat sold by
the defendant is not excessive, although plaintiff lost no great amount
of time from his work, where it appears that it resulted in offensive
uncontrollable diarrhea and recurrent spasms, and that his condi-
tion was permanent and progressive.

[1]Reported in 160 Pac. 14.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered July 24, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*Kerr & McCord*, for appellant.

*Garland & McLane*, for respondent.

ELLIS, J.—Action for damages for injuries to plaintiff, claimed to have been caused by eating diseased dried beef prepared and sold by defendant to plaintiff for immediate consumption as human food.

It is alleged that, as a part of its business, defendant prepares and sells at retail flesh of animals for human food; that on or about October 15, 1912, defendant negligently and carelessly sold and delivered to plaintiff certain dried beef which was poisonous, decayed, unhealthful and unfit for human food, which fact was unknown to plaintiff, who believed that the meat was sanitary and fit for food, and that he purchased it for food for himself and family, which fact was known to defendant; that plaintiff ate of the meat soon after purchasing it and that it caused him to become ill, to be thrown into fits and spasms; that his digestive system has become so impaired as to render his life a burden to himself and family; that he has lost control of his excretory organs, has frequent spasms, and that his health has become permanently impaired, all because of eating the meat so sold to him by defendant. On the first trial, a verdict was returned and judgment entered in favor of plaintiff. On defendant's appeal, the judgment was reversed on the ground that the action being a common law action for negligence, the trial court committed error in reading to the jury certain of the provisions of the pure food statute, Rem. 1915 Code, §§ 5453, 5455. *Flessher v. Carstens Packing Co.*, 81 Wash. 241, 142 Pac. 694.

The evidence was voluminous, resulting in a statement of facts of nearly five hundred pages. Lack of space forbids

more than a mention of its salient features.   The evidence
adduced on behalf of plaintiff shows that, about the middle
of October, 1912, he purchased a small quantity of dried
beef from the defendant at its market in Bremerton, Kitsap
county, late in the afternoon; that he placed it on a shelf
in the family cupboard in the original paper in which it was
delivered to him by the salesman; that next morning he placed
a piece of it between two slices of bread, wrapped the sand-
wich so made in a napkin, took it with him to his work in
the navy yard, and at noon ate the sandwich and soon after
became very sick, was attacked with violent vomiting, retch-
ing, spasms, nausea, running off of the bowels and became
unconscious; that, since that time to the time of trial, there
has been a frequent recurrence of these symptoms and he has
since been subject to frequent fits, spasms, convulsions and
periods of unconsciousness.   Several physicians who had ex-
amined him, and others from hypothetical questions, expressed
the opinion that his condition is the result of meat poisoning,
is permanent and will be progressive.   Others testified that,
in their opinion, his condition is not the result of meat poison-
ing but is produced by other causes.

Plaintiff's daughter ate of the same meat during the noon
hour following the day of its purchase and a few minutes
afterwards became sick with nausea and diarrhea, exhibiting
the same symptoms as those of plaintiff but in a slighter de-
gree.   Other members of plaintiff's family, including his son,
another daughter and his wife ate of the same food eaten
by plaintiff and his daughter on the day in question, except-
ing the dried beef, and did not become sick.   The bread used
by the plaintiff and his daughter in the sandwiches was part
of a considerable quantity made by plaintiff's wife, all of
which was eaten by the members of the household, both before
and after the time in question, with no bad results.   One Ed-
mondson purchased dried beef at the same time of plaintiff's
purchase, cut from the same larger piece, took it home with
him, ate a part of it without bread or anything else and in

a few moments became violently sick, exhibiting the same symptoms as those of the plaintiff. Two other men, near the same time, purchased dried beef from defendant which the evidence tends to show was cut from the same larger piece. Both of them became sick soon after eating of the meat, exhibiting symptoms similar to those of the plaintiff. Evidence was adduced on behalf of the defendant covering the whole process of its preparation of dried meats and its care of the meats, all tending to show that the meat in question was free from decay, filth or impurities and that no deleterious or poisonous preservatives were used in its preparation. It was also shown that all meats prepared by defendant are subjected to inspection by United States government inspectors, and that no meat prepared by defendant is offered for sale without being submitted to and passing such inspection. There was also evidence that two or three other persons ate of meat cut from the same large piece as that sold to plaintiff, without injurious results. Some of the same piece was also submitted to two chemists for examination, both of whom testified that they found no putrefactive bacteria or other impurities which would produce ptomaine poisoning. The jury returned a verdict for plaintiff in the sum of $3,600, on which judgment was entered after defendant's motions for judgment *non obstante veredicto* and for a new trial had been denied. Defendant appeals.

It is first contended that the court erred in refusing to grant appellant's motion for judgment *non obstante veredicto*. This contention is apparently based upon a two-fold ground: (1) that the complaint, as construed on the former appeal, sounded in tort through negligence and respondent was permitted to recover only on the theory of implied warranty resting in contract, which was not specifically pleaded; (2) that, in any event, no negligence was established, in that there was neither allegation nor proof that appellant knew that the meat was unwholesome.

As to the first ground, it is a sufficient answer to say that, where there is a positive duty created by implication of law independent of the contract, though arising out of a relation or state of facts created by the contract, an action on the case as for a tort will lie for a violation or disregard of that duty. *Sharpe v. National Bank of Birmingham*, 87 Ala. 644, 7 South. 106; *Nevin v. Pullman Palace Car Co.*, 106 Ill. 222, 46 Am. Rep. 688; *Hinks v. Hinks*, 46 Me. 423; 6 Cyc. 688. The implied warranty of the wholesomeness of food placed on sale, whenever it exists at all, arises as an implication of the common law. "The liability does not rest so much upon an implied contract as upon a violation or neglect of a duty voluntarily assumed." *Bishop v. Weber*, 139 Mass. 411, 1 N. E. 154, 52 Am. Rep. 715; *Tomlinson v. Armour & Co.*, 75 N. J. L. 748, 70 Atl. 314, 19 L. R. A. (N. S.) 923. In such a case, it is sufficient to set forth the facts from which the duty springs, the neglect of that duty, and resulting injury. It is not necessary to aver in terms the existence of the relation which in law casts the duty upon the vendor, or that he knew of the injurious quality of the food. The negligence consists in the violation of the duty to know, under such circumstances that he should have known and refrained from causing the injury. *Bishop v. Weber, supra.* Respondent, having pleaded the facts, was not required to plead the warranty as a legal conclusion in order to rely upon it.

As to the second ground, it is clear from the foregoing that, if respondent had the right to rely upon an implied warranty that the meat was sound and wholesome, it was not incumbent upon him either to plead or prove that appellant actually knew that the meat was unwholesome. He was only required to plead and prove such facts, to the satisfaction of the jury, from which the law raises the implied warranty. *Scienter* need not be pleaded, and it follows that it need not be proven. *Tomlinson v. Armour & Co., supra; Parks v. Yost Pie Co.*, 93 Kan. 334, 144 Pac. 202, L. R. A. 1915C 179.

It is said in the case last cited:

"The degree of care required of a manufacturer or dealer in human food for immediate consumption is much greater by reason of the fearful consequences which may result from what would be slight negligence in manufacturing or selling food for animals. In the latter a higher degree of care should be required than in manufacturing or selling ordinary articles of commerce. A manufacturer or dealer who puts human food upon the market for sale or for immediate consumption does so upon an implied representation that it is wholesome for human consumption. Practically he must know it is fit or take the consequences, if it proves destructive."

See, also, to the same effect: *Neiman v. Channellene Oil & Mfg. Co.*, 112 Minn. 11, 127 N. W. 394, 140 Am. St. 458; *Meshbesher v. Channellene Oil & Mfg. Co.*, 107 Minn. 104, 119 N. W. 428, 131 Am. St. 441.

It is true that the Minnesota cases were actions brought under the pure food statute; but it is obvious that, where there is an implied warranty at common law, the same rule as to the plea and proof of *scienter* must prevail. This court inferentially approved the same rule in the case of *Mazetti v. Armour & Co.*, 75 Wash. 622, 135 Pac. 633, Ann. Cas. 1915 C 140, 48 L. R. A. (N. S.) 213, a common law action grounded in negligence, in which actual *scienter* was neither pleaded nor proved, yet we extended the doctrine of implied warranty to a suit by a purchaser from the retailer against the manufacturer.

Appellant cites one case to the contrary, *Farrell v. Manhattan Market Co.*, 198 Mass. 271, 84 N. E. 481, 126 Am. St. 436, 15 L. R. A. (N. S.) 884. But in that case, which involved the sale of a fowl, it was held that there was no implied warranty because the purchaser selected the fowl himself from a number offered without reliance upon the skill and judgment of the vendor, and that in such a case the maxim *caveat emptor* applies. Even in that case it was said:

"If the selection is left to the dealer, due care by him is no defense. He is liable for latent unsoundness that could not be discovered."

In the case before us, respondent did not select the beef. He took what the dealer cut from a single large piece in stock and gave to him. True, he saw the larger piece from which the pieces given to him were cut, but there is no pretense that he examined it or selected any particular cut for himself. If the mere seeing and purchasing food on sale makes the purchaser take *caveat emptor*, there can be no such thing as an implied warranty except in case of canned goods. This is the position to which appellant seems to be driven, but it is not the law. It is a general rule, supported by the decided weight of authority, that, upon a retail sale of articles of food by a dealer directly to the consumer for domestic use and for immediate consumption, the law implies a warranty that such articles are sound and wholesome. Such is the rule of the common law and it is strengthened rather than impaired by the more modern decisions. *Wiedeman v. Keller*, 171 Ill. 93, 49 N. E. 210; *Chapman v. Roggenkamp*, 182 Ill. App. 117; *Race v. Krum*, 163 App. Div. 924, 147 N. Y. Supp. 818; *Leahy v. Essex Co.*, 164 App. Div. 903, 148 N. Y. Supp. 1063; *Rinaldi v. Mohican Co.* (App. Div.), 157 N. Y. Supp. 561; *Hoover v. Peters*, 18 Mich. 50; 15 Am. & Eng. Ency. Law (2d ed.), p. 1238. See note to *McQuaid v. Ross*, 22 L. R. A. 195, and many cases there cited. The same rule prevails under the civil law. *Doyle v. Fuerst & Kraemer*, 129 La. 838, 56 South. 906, Ann. Cas. 1913B 1110, 40 L. R. A. (N. S.) 480.

The writer of the opinion in the *Rinaldi* case expresses the personal view that this common law rule is no longer suitable to modern conditions, but nevertheless follows the general rule as recognized by the New York court in the *Race* case. He expresses no reason for that view and we can conceive of none, except in the case of canned goods not purchased directly from the manufacturer, in which case, for the reasons

stated in the *Mazetti* case, the manufacturer is liable directly to the purchaser even for an injury to his business, and it would seem, *a fortiori*, for injury to the health of a purchaser for immediate consumption.  In one case it has been held that a retail dealer who sells canned food, which the buyer knows he did not prepare, does not impliedly warrant its wholesomeness.  *Julian v. Laubenberger*, 16 Misc. Rep. 646, 38 N. Y. Supp. 1052.  But this is far from holding that, as to other than canned goods, a retail vendor for immediate consumption is not a warrantor, and especially far from holding that a retail vendor who sells goods of his own preparation directly to the consumer for immediate use, as in the case here, is not a warrantor.

We are persuaded that the general rule of implied warranty as we have stated it is the sound one.  It rests, as we said in the *Mazetti* case, not alone on privity of contract, but upon "the demands of social justice."  It has its ethical basis in the reasonable presumption that the vendor, if a regular retail dealer, and especially if he be also the manufacturer, has the better means of knowledge of the character of the food which he offers for sale.  As said in *Wiedeman v. Keller, supra:*

"In this case, however, the appellee was a regular retail dealer, and as such he sold the meat to appellant for domestic use, and, under the law as it seems to be settled in this country, as the meat turned out to be unwholesome, he was liable, although he was not aware that it was diseased when he sold it to appellant.

"In an ordinary sale of goods, the rule of *caveat emptor* applies, unless the purchaser exacts of the vendor a warranty.  Where, however, articles of food are purchased from a retail dealer for immediate consumption, the consequences resulting from the purchase of an unsound article may be so serious and may prove so disastrous to the health and life of the consumer that public safety demands that there should be an implied warranty on the part of the vendor that the article sold is sound and fit for the use for which it was purchased.  It may be said that the rule is a harsh one; but, as

a general rule, in the sale of provisions the vendor has so many more facilities for ascertaining the soundness or unsoundness of the article offered for sale than are possessed by the purchaser, that it is much safer to hold the vendor liable than it would be to compel the purchaser to assume the risk."

Whether the action be called one on warranty or of negligence it comes to the same thing. It sounds in tort. From the dealers, and especially the manufacturer's better means of knowledge arises the implication of a warranty and the attendant presumption of *scienter*. The negligence consists in offering stuff not known to be wholesome for sale, to the purchaser's injury.

It is next contended that the motion for a new trial should have been granted. Four grounds are urged: (1) that the evidence was insufficient to justify the verdict; (2) that certain testimony was erroneously admitted; (3) that certain instructions were erroneously given and certain requested instructions were erroneously refused; (4) that the verdict was excessive.

Respondent's evidence, the salient points of which we have endeavored to set out in our statement of the case, was clearly sufficient to take the case to the jury on the question of the unwholesomeness of the meat and as to whether it was the cause of respondent's sickness. Whether the evidence adduced by appellant was sufficient to overcome that of respondent was a question for the jury. The claim that the fact that parts of the same larger piece of meat from which that purchased by respondent was cut were examined by chemists and no putrefactive or other bacteria found was conclusive of its purity is not tenable. There was no satisfactory evidence that it was not possible that a part of the larger piece of meat might have been infected or infected in a dangerous degree and another part not infected or only slightly infected. It is elementary that it is not the province of this court to weigh the evidence. We cannot say that the trial

court abused its discretion in denying the motion for a new trial upon the record before us.

What we have said of the motion for judgment *non obstante* disposes of the question of appellant's knowledge. If the jury believed that the meat was in fact unwholesome and caused respondent's sickness, *scienter* is presumed as a matter of law, especially where, as here, the vendor for immediate consumption is not only the dealer but also the manufacturer.

The contention that improper testimony was admitted is based upon the claim that a long hypothetical question propounded to certain physicians included elements not established by other evidence. We have read the question and we have read all of the evidence. We are convinced that the question included no improper elements. That it did not include matters subsequently adduced by appellant in defense was not a fault. Appellant had every opportunity to cross-examine and include such elements.

It is also urged that the court erred in admitting the testimony of two physicians who expressed the opinion that respondent's sickness was caused by eating the meat, because their opinion was based partly upon the history of the case as detailed to them by respondent. It is asserted that this should have been excluded as hearsay. But neither of the physicians repeated what respondent had said. It is obvious that no intelligent examination could have been made nor any intelligent opinion expressed without taking into consideration both the subjective and objective symptoms. The evidence was not objectionable as being hearsay.

The instructions offered and the instructions given are long. We cannot review them in detail. It must suffice to say that we have read them all with much care. Those requested by appellant were largely based upon the theory that the vendor of provisions other than canned goods is not a warrantor of their wholesomeness and that the purchaser for immediate consumption takes *caveat emptor*. The objections

to the instructions given are based upon the same theory. If our view of the law be correct, it is manifest that the requested instructions were properly refused. In so far as the instructions requested correctly stated the law, they were sufficiently covered by the instructions given, which we find correctly covered the law applicable to the evidence.

In support of the claim that the verdict was excessive, appellant mainly relies upon the fact that respondent, up to the time of trial, had lost no great amount of time from his work. But if, as the evidence shows, he has chronic and uncontrollable diarrhea rendering him offensive to his family and friends, and recurrent spasms, and if the jury believed, as there was evidence tending to show, that this condition is permanent and progressive and results from eating the meat, we cannot say that the verdict is excessive. The assessment of damages in such a case is a matter peculiarly within the province of the jury. We find no warrant in the evidence for reducing it.

Two juries have found for respondent on practically the same evidence. We find no error in the record now before us calling for a reversal.

The judgment is affirmed.

MORRIS, C. J., FULLERTON, and CHADWICK, JJ., concur.