[No. 29673. Department Two. October 25, 1945.]

DAGOBERT BAUM *et al., Respondents,* v. HAZEL MURRAY,
*Appellant.*[1]

[1]Reported in 162 P. (2d) 801.

*Ballinger, Hutson & Boldt,* for appellant.

*Monheimer, Schermer & Mifflin,* for respondents and cross-appellants.

GRADY, J.—This action was commenced by respondents against appellant and a party whose identity was unknown to recover a judgment for damages alleged to have been sustained because of consumption of sausage sold by appellant. The case was tried before a jury resulting in a verdict for respondents. Motions for a judgment notwithstanding the verdict and for a new trial were made by appellant and denied by the court, and from the judgment entered on the verdict this appeal has been taken. The respondents have taken a cross-appeal from the judgment.

The theory of the complaint was that appellant, a retail dealer in food for human consumption, and the manufacturer of the sausage, whose name and identity were alleged to be unknown to the respondents, were negligent in the preparation, presentation, and sale of it, and warranted it was fit for human consumption and was properly prepared so that consumption thereof would not produce disease. The answer of appellant admitted certain allegations of the complaint, denied others, and disclosed that the sausage referred to was made by her employees.

The factual situation so far as we deem necessary to consider is substantially as follows:

On or about September 24, 1942, respondent Gertrud Baum purchased from appellant a small quantity of sausage encased in sausage skin and designated as German Mettwurst, the chief ingredient of which was cooked pork. About the same date, respondent Margaret Lindsey bought from appellant a small quantity of the same kind of sausage. Some days after eating the sausage, all of the respondents became ill and summoned and received medical aid. The physicians who examined and treated the respective parties diagnosed their illness as trichinosis, which is a parasitic in-

fection of the human body that may occur after eating pork meat.

On January 15, 1943, an attorney representing respondents called upon appellant and informed her that he represented two families, members of which had become ill from eating sausage purchased from her. The appellant was not informed as to who the parties were or where they resided, and it is not clear whether the date of the purchases was given or whether she made any inquiry with reference thereto. On January 18th, the attorney and respondent Baum called upon appellant in order that Mr. Baum might identify the kind of sausage purchased. On one of these occasions, the attorney informed appellant a suit for damages was contemplated. Respondents Lindsey admitted in their testimony that they never contacted appellant, and her testimony was that the first time she knew the names of the parties to whom the attorney referred, other than Mr. Baum, was when she was served with summons and complaint in the action April 24, 1943.

The first question to be determined is the theory upon which the case was tried and must be considered upon this appeal. The complaint is broad enough to base liability upon negligence of the manufacturer and breach of implied warranty of wholesomeness of food sold for human consumption on the part of both the manufacturer and the retailer of the food under the rules pronounced by this court in *Mazetti v. Armour & Co.*, 75 Wash. 622, 135 Pac. 633, Ann. Cas. 1915C, 140, 48 L. R. A. (N. S.) 213; *Flessher v. Carstens Packing Co.*, 93 Wash. 48, 160 Pac. 14; *Nelson v. West Coast Dairy Co.*, 5 Wn. (2d) 284, 105 P. (2d) 76, 130 A. L. R. 606; and *Geisness v. Scow Bay Packing Co.*, 16 Wn. (2d) 1, 132 P. (2d) 740.

Throughout the trial, the appellant contended that liability, if any, must be founded upon an implied warranty as provided by § 15, subds. (1) and (2) of the uniform sales act, Rem. Rev. Stat., § 5836-15 [P. P. C. § 860-9], but by reason of the failure of respondents to comply with § 49 of the act, Rem. Rev. Stat., § 5836-49 [P. P. C. § 854-33], they could not recover damages. Those sections are as follows:

"§ 5836-15. Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

"§ 5836-49. In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

We shall later refer to them for convenience as § 15 (1), (2) and § 49.

During the progress of the trial, when an objection made by counsel for respondents was being considered, in response to an inquiry by the trial judge counsel stated that respondents were predicating liability both upon negligence and warranty; but, at a later stage, when the admissibility of certain testimony was being discussed between the court and counsel, the trial judge said:

"There are just two questions for the jury here: Did these plaintiffs suffer from trichina, or trichinosis? And if they answer that in the affirmative, did they acquire it from this meat that they bought from the defendant. That's all I can see in this case."

Mr. Schermer (counsel for respondents): "That's right. It narrows it down."

The parties from then on proceeded upon the theory of implied warranty, but respondents did not at any time con-

cede the sales act furnished an exclusive remedy. The instructions of the court presented the case to the jury upon the theory of breach of implied warranty, except in one instruction it was stated that a consumer of food had the right to recover from the seller for breach of implied warranty "or for negligence," but no further reference was made to the subject of negligence in the instructions.

By appropriate motions, appellant challenged the sufficiency of the evidence, both factual and legal, to establish liability on her part. After the return of the verdict, appellant moved for a judgment notwithstanding the verdict and in the alternative for a new trial. The court overruled the motions. The appellant, in her brief, states that she does not assign error upon the overruling of her motion for a new trial.

The testimony on the part of appellant tended to show that the sausage was properly prepared and heated to a degree that would destroy any trichinae which might have been in the pork used in making the sausage. The testimony of the physicians called by appellant indicated that they were of the opinion that the time that elapsed between eating the sausage by respondents and their illness was such as to negative the idea that the sausage was the cause thereof, and that their symptoms did not disclose that they suffered from trichinosis. The physicians had no contact with respondents while they were ill. As opposed to those theories, the physicians who treated respondents and diagnosed their cases were of the opinion that they were suffering from trichinosis and that their illness was caused by the pork in the sausage containing trichinae. Our examination of the record convinces us that the jury was justified in accepting the testimony given by respondents and their witnesses and in rendering a verdict in their favor. *Johnson v. Kanavos,* 296 Mass. 373, 6 N. E. (2d) 434.

In view of the fact that this action was considered by the trial court upon the theory of implied warranty and the rules of law relative thereto as pronounced by our cases above cited, and that appellant contends that the rights

and obligations of the parties must be measured by the sales act, we are now called upon to decide whether cases of this kind, involving articles manufactured and sold for human consumption, in which it is claimed there has been a breach of an implied warranty of fitness for purpose or merchantable quality, shall be governed by our decided cases on the subject or by the sales act, although in food cases the same result would generally be reached.

The sales act has been recognized as being, in the main, a codification of the common law, but somewhat enlarging the liability of a seller and in turn affording him certain protection not given by the common law. An examination of our cases decided since the adoption of the act in 1925 leads us to the conclusion that, so far as applicable, it has been our rule of decision with the exception of the food cases. The *Mazetti* and *Flessher* cases were decided prior to the enactment of the sales act. The *Nelson* and *Geisness* cases were decided thereafter, but we were not called upon to decide whether the act applied as no reference was made to it in the briefs of counsel in either case, and both cases seem to have been presented to the lower court upon one or more of the theories advanced in the two former cases. We think, however, that when a statute is enacted by the legislature covering generally a certain subject of substantive law it should be followed and applied by the courts wherever applicable, irrespective of what the common law or rule of decision may have been theretofore, and it is from that standpoint we shall decide the questions raised in this case.

The subject matter of this case is food which the record shows was manufactured, sold, and purchased for human consumption. The relationship of the parties was that of manufacturer-retailer and purchaser-consumer so what we shall say in this opinion must be construed and confined to such relationship of the parties and the particular subject matter before us.

It will be observed from the part of § 15 of the act we have quoted above that there was no implied warranty as to the quality or fitness of the sausage for any particular

purpose, unless the facts surrounding the sale of it to respondents made either subds. (1) or (2) applicable. Generally when an article of food for human consumption is purchased either direct from the manufacturer or a retail dealer thereof, the buyer does by implication make known to the seller that the particular purpose for which the food is required is for consumption, and that factor clearly appears from the facts of this case. In arriving at this conclusion, the courts take into consideration the nature of the article itself, the quantity purchased, and the evident purpose for which it is manufactured, sold, and purchased, and have had no difficulty in arriving at the conclusion that both parties knew and contemplated that the goods were required for human consumption.

A difficult question sometimes arises and has caused some conflict of authority in food cases as to whether the buyer relied on the seller's skill or judgment. In some cases it has appeared that the buyer made his own selection and had an equal opportunity with that of the seller to ascertain or know of its quality or condition, and in such cases it has been decided that there was no implied warranty of quality or fitness for purpose. The principal conflict is found in those cases where the food was of such a character that its quality or fitness for purpose could not be determined by ordinary inspection and particularly with reference to the food manufactured and put up in sealed containers, especially so far as the liability of the retailer is concerned for breach of an implied warranty.

We find it unnecessary to explore this interesting and conflicting field of judicial thought and expression, because, regardless of what we may ultimately decide when a case is presented involving a retailer only, the manufacturer-retailer stands in a different position, as he is the one who is in the best position to ascertain and know the quality and fitness for purpose of the food he manufactures and sells, and it necessarily follows that purchasers of food put up in sealed containers, as the sausage in question was, (encased in sausage skin) must and do rely upon his skill and judgment.

In those instances where food is purchased and it cannot be said the buyer has relied upon the skill or judgment of the seller, the goods may have been bought by description, in which case by subd. (2), § 15 there is an implied warranty that the goods shall be of merchantable quality. The sausage was known and designated as "German Mettwurst" and was sold and bought by this description and carried with it an implied warranty that it was of merchantable quality. This warranty was also breached by appellant.

We have selected from a great number of authorities discussing and applying § 15, (1) and (2), the following in support of the views we have expressed. In some of them the food was contained in sealed packages and only the retailer's liability was involved, but in our opinion they apply with even greater force to one who is a manufacturer-retailer. *Ward v. Great Atl. & Pac. Tea Co.*, 231 Mass. 90, 120 N. E. 225, 5 A. L. R. 242; *Holt v. Mann*, 294 Mass. 21, 200 N. E. 403; *Burkhardt v. Armour & Co. and Great Atl. & Pac. Tea Co.*, 115 Conn. 249, 161 Atl. 385, 90 A. L. R. 1260; *Rinaldi v. Mohican Co.*, 225 N. Y. 70, 121 N. E. 471; *McSpedon v. Kunz et al.*, 271 N. Y. 131, 2 N. E. (2d) 513, 105 A. L. R. 1497; 1 Williston on Sales (2d ed.) 482, § 242a; 22 Am. Jur. 885, Food, § 100.

We have concluded to rest our decision upon the statutory liability of the appellant as a manufacturer-retailer because of the conflict of authority on the question of there being an implied warranty on the part of one who is a retail dealer only where the goods are purchased by him in sealed containers and sold in the same way without practical opportunity of knowing, or having reason to know, the food may prove to be unwholesome, although in our cases above cited, particularly the *Nelson* case, we stated that the implied warranty "reaches the retailer, wholesaler, producer and all others who participate in the sale and distribution of such deleterious articles of food." In that case the food involved was bottled milk, but as the case was decided independent of the sales act, that affords an-

other reason why we refrain from going into the question of the liability of a retail dealer of goods acquired by him in sealed containers under the act.

■ We, therefore, hold that § 15 (1) and (2) applies to this case and that the facts found by the jury bring the respondents within them, and that appellant, in her capacity as manufacturer-retailer of the sausage, impliedly warranted that it was reasonably fit for human consumption and was of merchantable quality and that these warranties were breached by her.

We now come to a consideration of § 49 above quoted. The appellant contends that the respondents did not comply with the terms of that statute because after acceptance of the food they purchased, they did not give adequate or sufficient notice to appellant of the breach of her warranties, and, in any event, the notice given was not within a reasonable time after respondents knew or ought to have known of the breach, and therefore, appellant was not liable for any breach of implied warranties.

The respondents meet this contention by claiming that § 49 does not apply to food sold and purchased for human consumption, but that if it does, adequate, sufficient, and timely notice was given.

■ Our approach to this problem is made somewhat difficult by the state of the record before us. The appellant throughout the trial laid the foundation for the application of the statute and proposed an instruction to be given to the jury to the effect that it was the duty of respondents to have given notice to appellant of any breach of warranty claimed within a reasonable time after they knew or ought to have known of such breach; and that, in the absence of such notice within a reasonable time, appellant would not be liable; that it was for the jury to determine what would be a reasonable time under all the facts and circumstances of the case, and, in determining that question, the jurors should take into consideration at what time the respondents became aware of such breach of warranty, if there was such a breach, and had an opportunity to give notice thereof to the appellant. The court refused to give this

instruction, to which an appropriate and timely exception was taken. The question of adequacy of notice and the timeliness thereof were not submitted to the jury, but after the verdict was returned, and in passing upon the motion for a new trial, the court decided that § 49 was not applicable to the sale and purchase of food for human consumption, but that if it should be concluded that the statute was applicable, then, as a matter of law, the notice given was adequate and was given within a reasonable time in accordance with the statute. If the trial court was in error in refusing to give the instruction in question and in holding as a matter of law that the notice given was both adequate and timely, the only way by which those errors could have been corrected by the trial court was to have granted the appellant a new trial. When the motion for a new trial was denied the ruling of the court was subject to review by this court upon an appeal from the judgment, but we cannot review the claimed errors because the appellant has waived that motion by the assertion in her brief that she does not assign error upon the overruling of the motion for a new trial. However, we do have before us the question of whether, as a matter of law, the notice was neither sufficient nor timely.

The respondents in support of their contention that § 49 does not apply to sales of food rely upon the cases of *Kennedy v. F. W. Woolworth Co.,* 205 App. Div. 648, 200 N. Y. Supp. 121; and *W. S. Maxwell Co. v. Southern Oregon Gas Corp.,* 158 Ore. 168, 74 P. (2d) 594, 114 A. L. R. 697. We are unable to adopt the construction placed upon the statute by the New York court. The Oregon case cited that case and quoted a paragraph from it but did not discuss it as applied to food. The court had before it a question of warranty of title and whether § 49 applied to such a situation. The statute is general in its application and applies to all "goods" as that term is defined by § 76 of the uniform sales act, Rem. Rev. Stat., § 5836-76 [P. P. C. § 855-1]. Food manufactured for sale and human consumption clearly falls within the definition of "goods." In order to exclude food from the terms of the statute there must be

an exception engrafted upon it that does not appear upon its face. The language is plain and unambiguous and there is no justification for any assertion that the legislature in enacting the statute intended, by implication, to exclude articles of food merely because they might be immediately consumed after they were purchased. In such a case the opportunity to investigate may be more difficult, but this does not justify any court-made exceptions. As opposed to the doctrine of those cases, so far as food is concerned, are the cases of *Timmins v. F. N. Joslin Co.*, 303 Mass. 540, 22 N. E. (2d) 76, 123 A. L. R. 591; *Savage v. Alpha Lunch Co.*, 300 Mass. 520, 16 N. E. (2d) 38; *Schuler v. Union News Co.*, 295 Mass. 350, 4 N. E. (2d) 465; *Hazelton v. First Nat. Stores, Inc.*, 88 N. H. 409, 190 Atl. 280; *Johnson v. Kanavos*, 296 Mass. 373, 6 N. E. (2d) 434.

It was suggested during the argument of this case that some of the foregoing cases should not be approved by this court because those courts had adopted the view that the doctrine of implied warranty in the sale of goods did not apply unless there was privity of contract between the parties involved in the litigation, and that this court had decided that privity of contract was not necessary in the case of the sale and purchase of food for human consumption. Even though we are not in accord with the holding of those courts on the question of privity of contract, nevertheless, we may accept their reasoning on the construction of the statute, if we consider it sound and logical.

We are of the opinion that the statute, in plain terms, provides that it was the duty of respondents to have given notice to appellant of the breach of warranty. However, respondents did give notice of the breach of warranty to appellant. The statute does not prescribe any form of notice, and all that is necessary is that a seller of food be informed of its unwholesomeness or unfitness for human consumption in some manner sufficient to apprise him that a claim is being made to that effect so that the seller may govern himself accordingly. *Truslow & Fulle v. Diamond Bottling Corp.*, 112 Conn. 181, 151 Atl. 492, 71 A. L. R. 1142. When the attorney for respondents called upon appellant

and made known to her that persons he represented had purchased German Mettwurst sausage from her and upon consumption thereof had become ill and that suit for damages was contemplated, the requirement of the statute was met. The appellant was then put upon inquiry, and, if she desired to make an investigation to determine the facts, the opportunity was then open to her. The purpose of the requirement of the statute was then served so far as appellant was concerned. The notice might have been more complete had the names and addresses of the respondents been disclosed, but that omission did not make the notice so insufficient as to nullify it.

The appellant urges that even though it be held that the notice given was sufficient, it was not given within a reasonable time and hence was ineffectual. As to what may be considered a reasonable time is usually a mixed question of law and fact. It depends upon such a variety of facts and circumstances in each particular case that it usually resolves itself into a question of fact to be determined by the jury upon proper instructions by the court. In some cases the undisputed factual situation may be such that the court can say as a matter of law whether a certain thing required was or was not done within a reasonable time. *McDougall v. O'Connell*, 72 Wash. 349, 130 Pac. 362, 131 Pac. 204; *Morgan v. Veness Lbr. Co.*, 108 Wash. 674, 185 Pac. 607; *Truslow & Fulle v. Diamond Bottling Corp.*, supra, *Johnson v. Kanavos*, supra; 2 Williston on Sales (2d ed.) 1258, § 484a.

Although it may be said that the facts as to when the notice was given are not in dispute, reasonable minds may well differ as to the conclusion to be drawn from them, and, that being the case, we would not be justified in holding as a matter of law that the notice either was or was not given within a reasonable time. The sausage was purchased about September 24th. The respondents became ill several days thereafter. The illness, in some instances, was somewhat prolonged, and they were obliged to go to hospitals and be attended by physicians. It does not appear

from the record that respondents were informed by their physicians that their illness was due to the sausage they had eaten. Judging from the conflicting views of the physicians, it is not surprising that respondents were not sufficiently certain that the sausage caused their illness to justify them in making a complaint to the appellant and notifying her that such was the case. It was not until one of the respective families, who were strangers to each other, ascertained that the other had purchased similar sausage from appellant and had become ill and had discussed the matter that they reached the conclusion it was the sausage that had caused the illness. They then consulted counsel and notice was given to appellant. This was on January 15, 1943. We think, under those facts, it was a question for the jury to have determined whether the notice was given within a reasonable time.

██ ██ The respondents by cross-appeal contend the respective amounts awarded them by the jury were inadequate under the undisputed evidence and ask that we raise each verdict to an adequate amount. No suggestion is made by cross-appellants as to what would constitute adequate amounts. They did not make any motion for a new trial upon the ground of inadequacy of damages. We are of the opinion that in a case tried by a jury, if a successful plaintiff is not satisfied with the amount of the verdict, he must first appeal to the trial court for relief and either secure a new trial upon the statutory grounds or an order from the court increasing the amount of the award and giving to the defendant the alternative of consenting that a judgment may be entered for the amount fixed by the court or having an order entered granting a new trial. We do not think this court has the power to increase an award made by a jury as a part of its appellate jurisdiction, except in a case where it appears upon the face of the record by a process of mathematical computation the amount of the award was an error, and even then the better practice might be to remand the case to the trial court to make such computation. The cases of *Pearson v. Picht*, 184 Wash. 607, 52 P. (2d) 314, and *Knight v. Duggan*, 163 Wash. 107, 299

Pac. 986, cited by cross-appellants, were nonjury cases and upon appeal were heard by this court *de novo,* hence the court had the power to increase the amount of recovery.

The judgment is affirmed.

BEALS, C. J., BLAKE, ROBINSON, and JEFFERS, JJ., concur.

December 6, 1945. Petition for rehearing denied.

[1]Reported in 162 P. (2d) 827.