[No. 32110. Department One. July 3, 1952.]

LEO R. BARTLETT, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Defendant*, UNITED STATES GYPSUM COMPANY, *Appellant.*[1]

*John T. Raftis,* for appellant.

*Thomas I. Oakshott,* for respondent.

DONWORTH, J.—Respondent is a workman whose application for compensation for an injury allegedly suffered in the course of extrahazardous employment at appellant's plant in Evans, Washington, was rejected by the supervisor of industrial insurance. Upon appeal and hearing, the board of industrial insurance appeals sustained the order of the supervisor. Respondent thereupon appealed to the superior court, which tried the action sitting without a jury. The trial resulted in a judgment reversing the decision of the

[1]Reported in 245 P. (2d) 1018.

board and referring the case to the supervisor for further proceedings in accordance therewith. The employer has appealed.

Respondent was employed by appellant as a kiln fireman and, at the time of the injury, was working alone. According to his testimony, about two a. m. on July 2, 1950, while firing a kiln with slabs of wood weighing about sixty pounds apiece, respondent experienced a sharp pain in his back. He thought he had strained his back, lay down for a short while, and then finished his shift, which ended at seven a. m. He did not report the accident to appellant, but complained to his wife on returning home that the slabs were too heavy.

He did not work for about a week following this incident because a railroad strike had compelled the plant to suspend normal operations. He returned to work on July 9th (when the strike ended), and performed his duties continuously forty hours per week until August 11th, although he testified that he no longer fired the kiln with heavy slabs, but laid them aside. During all this time, his back and right hip and leg pained him and became progressively more painful. He complained of the pain to several of his fellow workmen and finally to his foreman, but did not mention that his trouble was due to the strain caused by lifting slabs on July 2nd. He thought he had rheumatism or neuritis. He denied that he had suffered any accident or fall subsequent to July 2nd.

Respondent was entitled to a week's vacation, which he took beginning August 12th. During his vacation, he remained at home except that he worked one shift on August 17th. He laid off work again the next day and remained home. On August 19th, the pain having become very severe, respondent consulted Dr. Roy Lowell, a physician and surgeon, who diagnosed his condition as a ruptured intervertebral disc, which was necessarily of traumatic origin. Dr. Lowell could not recall whether respondent had told him that he had been injured on any certain date, but he did recall discussing with respondent the possibility

that the injury could have been caused by heavy lifting on the job. In answer to a hypothetical question, propounded by counsel for respondent, the doctor testified that the injury "very likely could have" originated with the exertion of heavy lifting on July 2nd, and on cross-examination stated that "it probably was the factor that precipitated it" and "if he [respondent] did nothing else of a strenuous nature, it is probable."

Respondent's wife testified that he complained when he came home on the morning of July 2nd that the wood slabs were too heavy and said that it was a wonder that a man did not break his back lifting them. She further testified that respondent was "miserable" that day, that from then on he had pain in his lower back, hip, and right leg, and that he just lay around the house during his vacation (which began about August 12th) until he went to see Dr. Lowell.

Appellant had no knowledge of the alleged injury until September 2nd, when its foreman went to respondent's home to find out why he had not reported for work. Respondent then informed the foreman that he had hurt his back on July 2nd. Respondent subsequently underwent an operation on his back on November 29, 1950, and the ruptured disc was removed. He was unable to work for six months. At the time of the board hearing (June 12, 1951), he had been employed as a night watchman at a sawmill for about two weeks.

At the suggestion of appellant's officers, respondent, after consulting his attorney, put in a claim for nonoccupational injury under a group accident policy carried by appellant for its employees and later received payments from the insurer compensating him for his hospital and medical expense. He testified that, if he should receive industrial insurance, he will be obligated to repay the amount received from the insurer.

Appellant introduced in evidence a claim made by respondent under the group insurance policy for an injury sustained on December 16, 1946 ($3\frac{1}{2}$ years prior to the

injury involved in this case), in which respondent made claim for a low back injury caused by cranking a car.

Appellant first assigns error to the failure of the court to sustain its objection to a hypothetical question asked of Dr. Lowell. In the question, counsel for respondent asked the witness to assume, among other things, that the workman had never previously had a back condition or injury, and that after the injury of July 2nd he did not work the next day nor for several days thereafter. Appellant complains because the question did not include the fact (which was later brought out by its own witness) that respondent had suffered a "low back strain" in 1946 while cranking his car and had not worked for two weeks thereafter.

That the hypothetical question did not include matters subsequently adduced by appellant in defense, did not constitute error. *Flessher v. Carstens Packing Co.,* 93 Wash. 48, 160 Pac. 14. Appellant had an opportunity upon cross-examination to include the element of the 1946 injury had it desired to do so.

Appellant further argues that this hypothetical question was improper because it did not include a statement subsequently made by respondent in his testimony that he would have returned to work the day following the injury if the railroad strike had not closed down the plant. The record clearly establishes that, regardless of the reason, respondent did not work for a week after July 2nd and the court did not err in overruling appellant's objection to the form of the hypothetical question.

Appellant assigns error to the findings of the court that the injury occurred on July 2nd and that respondent was totally disabled from August 17, 1950, to March 27, 1951. Incidentally, this latter date appears to be a typographical error and should be *May* 27, 1951. There is no dispute in the evidence that respondent was totally disabled from August 17, 1950, to May 27, 1951. Appellant makes no argument contradicting the finding that respondent was totally disabled during this period.

There is likewise no dispute in the evidence that respond-

ent suffered a ruptured intervertebral disc which was traumatic in its origin. The only question is whether the evidence sustains the finding that the injury occurred on July 2, 1950, while respondent was in the course of his employment. All the testimony upon this issue of fact was given by respondent, his wife, and Dr. Lowell, who first treated him some six weeks after July 2nd.

Appellant relies heavily upon *Olympia Brewing Co. v. Department of Labor & Industries,* 34 Wn. (2d) 498, 208 P. (2d) 1181, wherein we said that a person who claims under the industrial insurance act should be held to strict proof of his right to receive the benefits provided thereby, and *Stampas v. Department of Labor & Industries,* 38 Wn. (2d) 48, 227 P. (2d) 739, wherein we emphasized that the burden is upon the claimant to establish the incorrectness of the board's decision and held that the probability of a causal connection between the industrial injury and the subsequent physical condition must be established by the testimony of medical experts.

We have not, however, held that the testimony of lay witnesses cannot be considered in a case like this in determining whether there is a causal connection between the injury and the subsequent physical condition, and we have recognized that in some cases the testimony of lay witnesses may have a material bearing upon the question. *Rambeau v. Department of Labor & Industries,* 24 Wn. (2d) 44, 163 P. (2d) 133.

We are of the opinion that the findings of the trial court are supported by the evidence. Indeed, appellant's testimony and exhibits are not in conflict with respondent's evidence in any material respect. The undisputed facts are similar to those involved in *Guiles v. Department of Labor & Industries,* 13 Wn. (2d) 605, 126 P. (2d) 195.

The claimant in that case was the widow of a workman who allegedly died as the result of an industrial accident. As in the present case, there was no eye witness to the accident. The only testimony produced by the claimant was that of the doctor who had performed an autopsy and that of the claimant herself and her two sons relating conver-

sations had with the deceased. The department produced no evidence whatever. In holding that the claimant had sustained the burden of proof necessary to overcome the presumption of the correctness of the board's decision and thus be entitled to compensation, we said:

"That deceased was engaged in arduous work there can be no doubt. Claimant testified that, on the day previous to his collapse, he had been engaged in lifting and pulling on a twenty foot section of a two and one-half inch pipe. There is no evidence to the contrary, and it was possible for the department to have proved the contrary had such not been the case. Claimant also testified that deceased complained to her of having strained and twisted himself while lifting and pulling on this section of pipe. While testimony of this kind is very unreliable, being easy to manufacture and hard to refute, we have held that, in compensation cases, it is admissible, and, when consistent with other evidence in the case, is entitled to some probative effect. [Citing cases.]

"The fact of injury in the course of employment may be proved by circumstances as well as by direct testimony. *Demastes v. State Compensation Commissioner*, 112 W. Va. 498, 165 S. E. 667; *Flucker v. Carnegie Steel Co.*, 263 Pa. 113, 106 Atl. 192. It is not essential that there should be eyewitnesses to the accident, or that the accident should be evidenced by external marks or wounds. *Demastes v. State Compensation Commissioner, supra.*

"The claimant was not obligated to establish her case beyond a reasonable doubt. It was requisite for her to make it appear more probable that her husband's death was caused by a strain or by a combination of a strain and disease than by disease alone. [Citing cases.]"

The testimony of respondent and his wife was consistent with that of Dr. Lowell and is entitled to the weight accorded it by the trial court. Appellant produced no medical testimony. Dr. Lowell's opinion is not contradicted. There is no medical testimony that respondent's low back strain in 1946 had any connection with his physical difficulties in the summer of 1950.

The evidence taken as a whole is consistent with respondent's contention that after the injury on July 2nd, he thought that he was just suffering from a strain and,

therefore, made no complaint to his employer. He continued to work after the strike was over. When his back did not improve, he thought he had rheumatism or neuritis and obtained a prescription from his foreman, who had suffered from this malady. He then took his week's vacation and stayed around home, hoping that the pain would disappear with rest. When the pain became unbearable, he finally consulted his physician. His wife testified that respondent "is the type that doesn't give up." We feel that he should not be penalized because of his fortitude and his fruitless effort to "wear out" the pain.

Respondent, by a preponderance of the evidence, overcame the presumption that the board's decision is correct. The trial court's findings support its conclusions and judgment. The trial court is directed to correct the typographical error in subparagraph (b) of the judgment (which relates to time loss) so that the word "March" shall read "May."

As so corrected, the judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.