[L. A. No. 25635.   In Bank.   June 23, 1960.

ERVIN L. PETERSON, Appellant, v. LAMB RUBBER
COMPANY (a Corporation), Respondent.

Robert C. Pannell, LeRoy L. Center and Asher R. Sailors for Appellant.

Moss, Lyon & Dunn, Sidney A. Moss and Henry F. Walker for Respondent.

Bronson, Bronson & McKinnon as Amici Curiae on behalf of Respondent.

SCHAUER, J.—In this action to recover for personal injuries suffered by plaintiff as the result of explosion of a grinding wheel purchased from defendant by plaintiff's employer, the trial court sustained without leave to amend a general demurrer to the count of the complaint based on breach of implied warranty. Trial was had on the other (first) count, based on negligence, and the jury found for defendant. Plaintiff appeals from the ensuing judgment for defendant. We have concluded that plaintiff's contentions of error in the trial on the negligence count are without merit

but that the judgment should be reversed with respect to the warranty count.

In December, 1954, defendant, a manufacturer of rubber bonded abrasives, sold and delivered to plaintiff's employer, AiResearch Manufacturing Company, a corporation, one hundred rubber bonded abrasive wheels for use in grinding and burring operations. The wheels, two inches in diameter, contained no markings either to identify the manufacturer or to indicate the maximum revolutions per minute at which the abrasive wheels could be safely operated. In June, 1955, while plaintiff in connection with his employment was using a wheel which he alleges was one of those sold to his employer by defendant, the wheel "blew up" or disintegrated in his face and a portion of the abrasive imbedded itself in his left eye, resulting in admittedly serious injury.

### Warranty Count

Plaintiff's first contention on appeal is that the court erred in sustaining the demurrer to the second cause of action, which alleged an implied warranty by defendant of fitness for use and of merchantable quality under the provisions of subdivisions (1) and (2) of section 1735 of the Civil Code.[1] The parties agree in their briefs that the only ground upon which the demurrer could have been sustained is that of lack of privity of contract between plaintiff and defendant manufacturer.

Defendant, relying upon *Burr* v. *Sherwin Williams Co.* (1954), 42 Cal.2d 682, 695-697 [19-23] [268 P.2d 1041], and *Lewis* v. *Terry* (1896), 111 Cal. 39 [43 P. 398, 52 Am.St.Rep. 146, 31 L.R.A. 220], urges that the general rule is that implied warranties, other than in the sale of food or drugs, extend only to the immediate buyer, and points out that in the case of many sales, it is contemplated that someone other than the buyer will use the goods, although that fact has not generally been considered to constitute a ground for imposing on the seller an implied warranty liability to a user who is not a

---

[1]Civ. Code, § 1735, subd. (1): "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Subd. (2): "Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

purchaser. For example, it was held in *Lewis* v. *Terry* (1896), *supra*, that a tenant could not recover on implied warranty against a manufacturer-seller for injuries sustained through use of a defective bed, purchased by his landlord. (*Cf. Dahms* v. *General Elevator Co.* (1932), 214 Cal. 733, 738 [1] [7 P.2d 1013].) Plaintiff, on the other hand, contends that there are no California cases directly in point involving a fact situation in which a rubber bonded abrasive was "purchased and sold to be used on high speed, revolving, power-driven equipment, a highly dangerous instrumentality," and that the trend today is toward disappearance of the requirement of privity of contract in cases where it is foreseeable that someone other than the immediate vendee will be injured by a defective product. The more recent California cases on the subject, and those cited or discovered from out of state jurisdictions which seem in point here, are as follows:

*Klein* v. *Duchess Sandwich Co., Ltd.* (1939), 14 Cal.2d 272, 276-283 [2, 3] [93 P.2d 799]: Plaintiff husband purchased from a retailer packaged sandwiches manufactured by defendant Duchess Sandwich Company. Plaintiff wife swallowed a bite from one, discovered worms in the remainder of the sandwich, and became ill. Defendant contended that no implied warranty existed as to plaintiffs, because of lack of privity. This court, in reliance upon various out of state cases, as well as upon other authorities, concluded (p. 282 [2]) that "the remedies of an injured consumer of unwholesome food ought not to be made to depend 'upon the intricacies of the law of sales,' and the warranty of the manufacturer to such consumer should not be made to rest solely on 'privity' of contract," and (p. 283 [3]) that "the rulings made in the authorities herein cited [recognizing an exception to privity requirements in the case of foodstuffs] are based on sound principles,—affording as they do an adequate remedy for injuries which may result from the eating of unwholesome food by an ultimate consumer who, under modern economic conditions, almost of necessity, must purchase many items of food prepared in original packages by the manufacturer and intended for the consuming public, although marketed through an intermediate dealer."

*Vaccarezza* v. *Sanguinetti* (1945), 71 Cal.App.2d 687, 689 [163 P.2d 470]: Plaintiffs husband and wife purchased salami from a retailer, which had been manufactured by defendants Parducci, et al. The wife and two children ate some of it and developed trichinosis. Plaintiffs sued both retailer and manu-

facturer, on an implied warranty of fitness. The court declares [1] the rule of absolute liability regardless of negligence, in implied warranty cases under section 1735 of the Civil Code, and [2] that privity is not required between consumer and manufacturer where foodstuffs are involved.

*Tremeroli* v. *Austin Trailer Equip. Co.* (1951), 102 Cal. App.2d 464, 477 [227 P.2d 923] : Plaintiff sued both retailer and manufacturer when a so-called fifth wheel (a device which connects and holds together a tractor and semitrailer) which he had purchased from the retailer, broke and caused plaintiff property damage. Although defendant cites this case in support of the view that privity is required between consumer and manufacturer to support recovery upon an implied warranty, and although the case did proceed upon that view, the point does not appear to have been disputed or argued. Thus, it is related in the opinion (p. 467) that the case was ''submitted to the jury, on proper instructions which are not challenged,'' which withdrew from the jury the cause of action against the manufacturer based on warranty, because the evidence showed no privity, and submitted only that based on negligence. The statement on page 477 [9] of the opinion that the manufacturer's ''liability, if any, is dependent on negligence,'' apparently merely accepts the ''unchallenged'' theory of the trial court. Since ''Cases are not authority for propositions not considered'' (*People* v. *Banks* (1959), 53 Cal.2d 370, 389 [1 Cal.Rptr. 669, 348 P.2d 102]), this case would not appear especially helpful to defendant.

*Burr* v. *Sherwin Williams Co.* (1954), *supra*, 42 Cal.2d 682, 695-697 [19-23] : Plaintiffs authorized one Patton, field man for Cooperative, to arrange, as per Patton's recommendations, to obtain an insect spray and hire an aviation company to apply it to plaintiffs' cotton crop. Patton, with plaintiffs' approval, engaged defendant Rankin Aviation to do the spraying. Cooperative delivered to Rankin in sealed drums spray material, which defendant Sherwin Williams had manufactured and delivered to Cooperative on consignment. Rankin applied the spray, which damaged plaintiffs' crop. Plaintiffs sued Sherwin Williams, Cooperative and Rankin, charging all three with negligence and the first two with breach of warranty as well. The jury verdict was against Sherwin Williams, but in favor of the other defendants. On appeal Sherwin Williams urged, among other things, error in the instructions on implied warranties.

The trial court had instructed (pp. 692, 695) that if there was an implied warranty under subdivisions (1) and (2) of section 1735 of the Civil Code,[2] there was no requirement of privity of contract between the manufacturer and the ultimate consumer and the manufacturer would be liable, regardless of negligence, for the damage caused by any breach of this warranty. In discussing the privity point this court observed (p. 693 [12]) that "the *persons to whom* the insecticide was *delivered were* obviously their [*plaintiffs'*] *agents* for purposes of the spraying operation." (Italics added.) And although holding (p. 697 [24]), after discussing the exceptions with respect to (1) foodstuffs and (2) express warranties by means of labels or advertising material (pp. 695-697 [19-22]), that the trial court had erred in instructing that privity was not required to hold Sherwin Williams on statutory implied warranties, this court, in reversing the judgment, further declared (p. 697 [23]) that "We need not consider at this time whether plaintiffs . . . can *establish that there was privity between themselves and Sherwin Williams or that they come within some exception to the rule.*" (Italics added.) With respect to establishing privity, this comment seemingly refers to the earlier remark that the persons to whom the insecticide was delivered were obviously plaintiffs' agents. And since the exceptions to the privity rule had earlier been stated to be (1) the foodstuff exception which plainly was not involved in the case, and (2) the express warranty exception, the court's reference to "some exception," was clearly intended to guard against closing the door to the development of other exceptions as law and justice and changing economic conditions might require. As shown by the Duchess Sandwich case (*Klein* v. *Duchess Sandwich Co., Ltd.* (1939), *supra*, 14 Cal.2d 272, 276-283 [2, 3], the foodstuff exception was thus developed.

*Collum* v. *Pope & Talbot, Inc.* (1955), 135 Cal.App.2d 653 [288 P.2d 75]: Plaintiff carpenters were injured when a ceiling joist broke under their weight. They sued the dealer who had sold it to their general contractor employer, and also sued Pope & Talbot, the lumber mill operator which had processed and sold the joist to the dealer. The trial court ordered a nonsuit on the counts predicated on an alleged warranty of fitness for use. On appeal it was held (p. 656) that the lack of privity was fatal to plaintiffs' claims, although in discussing (p. 657) plaintiffs' "claim that the trend of decision in the last 25 years had been to extend the foodstuffs exception

---

[2]See footnote 1, *supra*, p. 341.

to include any 'defectively manufactured product of industry which causes bodily injuries' . . . ,'' the court pointed out (pp. 659-660 [1]) that this timber was not "manufactured," that any defects in it were as readily apparent to plaintiff journeymen carpenters, as to mill inspectors, and, further, that plaintiffs had themselves significantly changed this timber by cutting, fitting and nailing it in place to serve as a ceiling joist. Therefore, said the court, "we do not feel that we as an intermediate court of appeal should undertake to enunciate and declare the suggested extension" of the exception.

In 77 Corpus Juris Secundum 1124, it is declared that "Although there is some authority to the contrary, it has been held that privity is not a prerequisite to recovery for breach of warranty where the subject of the sale which caused the injury was inherently dangerous." In support, five cases are cited: (1) *Mazetti* v. *Armour & Co.* (1913), 75 Wash. 622 [135 P. 633, 48 L.R.A. N.S. 213, Ann. Cas. 1915C 140], which involved food: the court did, however, declare in its general discussion, but without citation of authority, that to the general rule requiring privity "certain exceptions have been recognized: (1) Where the thing causing the injury is of a noxious or dangerous kind. . . ." (P. 634 [1] of 135 P.)

(2) *Fleenor* v. *Erickson* (1950), 35 Wn.2d 891 [215 P.2d 885], in which plaintiffs sought to recover damages suffered when their refrigerator locker plant in the basement of their store building froze the ground beneath, causing the building to buckle and necessitating the closing of the plant. After citing and quoting from the Mazetti case certain exceptions to the privity rule, including that "Where the thing causing the injury is of a noxious or dangerous kind" (p. 889 [3] [215 P.2d ]), the court held that because of lack of privity plaintiffs could not recover on warranty from the manufacturer of the insulating material used in installing the locker plant.

(3) *Williams* v. *S. H. Kress & Company* (1955), 48 Wn.2d 88 [291 P.2d 662], in which plaintiff consumer sued a manufacturer for damage allegedly resulting from the use of antiseptic as a mouthwash. After again citing and quoting (p. 664 [1, 2] [291 P.2d]) the exceptions mentioned in the Mazetti case, the court in this third case from Washington held (p. 665 [3] [291 P.2d]) that because the purchaser had not made known to the retailer that she wished a mouthwash,

and the antiseptic was not so labeled, there was no implied warranty of fitness.

(4) *Worley* v. *Procter & Gamble Mfg. Co.* (1952), 241 Mo. App. 1114 [253 S.W.2d 532], in which the ultimate consumer of a detergent which allegedly resulted in skin injuries had relied on advertising labels, which, as already seen, is an exception to the privity rule.

(5) *Mahoney* v. *Shaker Square Beverages* (1951, Ohio), 102 N.E.2d 281, is a trial court decision. Plaintiff, a household employe, was injured when a bottle of ale she was removing from a carton, exploded. The court reviewed various theories of recovery and concluded, among other things, that (p. 289 [5]), a bottle of ale containing pressure which causes it to explode upon ordinary handling is a dangerous instrumentality and not of merchantable quality, its sale is a breach of warranty and also negligence under Ohio law for which action lies in either warranty or negligence, and liability in either event extends to a member of the purchaser's household, including servants.

Thus, none of these five cases provides clear support for the general proposition for which they were cited: that privity is not required where the item sold is inherently dangerous. Nor do other appellate court cases relied upon by plaintiff seem to do so: *United States Pipe & Foundry Co.* v. *City of Waco* (1937), 130 Tex. 126 [108 S.W.2d 432], and *Mannsz* v. *Macwhyte Co.* (1946), 155 F.2d 445, 449, both involved express warranties direct to the consumer, and *Coca-Cola Bottling Works* v. *Lyons* (1927), 145 Miss. 876 [111 So. 305], was a situation of glass in a bottle of beverage and so comes within the food cases. *DiVello* v. *Gardner Machine Co.* (1951, Ohio), 102 N.E.2d 289, 293 [10], is another Ohio trial court opinion; it does, however, hold specifically that the sale of a "grinding wheel carried with it an implied warranty of merchantability and fit for the usages designed and that such warranty extended to the workmen of the vendee who was injured in its ordinary use because of a latent defect . . ." But as suggested by Professor Prosser (Torts, 2d ed., p. 510, n. 49) the DiVello case was perhaps overruled by *Wood* v. *General Electric Co.* (1953), 190 Ohio St. 273 [112 N.E.2d 8, 11-12 [3, 4]], in which the Ohio supreme court held that because of lack of privity the consumer could not recover against the manufacturer on an implied warranty of fitness where an allegedly defective electric blanket resulted in plaintiff's residence catching fire. (*Cf.* however, *Rogers* v.

*Toni Home Permanent Co.* (1958), 167 Ohio St. 244 [147 N.E.2d 612, 616 [4, 5]]; *Markovich* v. *McKesson & Robbins, Inc.* (1958), 106 Ohio App. 265 [149 N.E.2d 181, 187]; *Arfons* v. *E. I. DuPont De Nemours & Co.* (1958, C.C.A. 2), 261 F.2d 434, 436; which suggest a possible disposition by Ohio to relax the privity rule, although any such relaxation may be intended to apply only in cases of advertising by label, tradename, etc., as discussed in *Burr* v. *Sherwin Williams* (1945), *supra*, 42 Cal.2d 682, 696 [19].) And the other case cited by plaintiff, *Laclede Steel Co.* v. *Silas Mason Co.* (1946), 67 F.Supp. 751, also a trial court decision, involved additional factors which make it not persuasive here. The same may be said of other cases cited by both parties, some of which turn on the exceptions relating to foodstuffs and to advertising or labels directed to the ultimate consumer.

Plaintiff emphasizes, however, that the grinding wheel here involved was manufactured, sold, and purchased, to be used on a power driven, high speed, rotating motor; that it was known by defendant manufacturer to be dangerous if defectively made or if operated at speeds beyond its maximum capabilities (which were not marked on it), and that its ingredients were secret and known only to defendant. Therefore, says plaintiff, it was a dangerous instrumentality if containing latent defects or if improperly used, and in view of modern industrial usage employes should be considered a member of the industrial "family" of the employer—whether corporate or private—and to thus stand in such privity to the manufacturer as to permit the employes to be covered by warranties made to the purchaser-employer.

We are persuaded that this position is meritorious. In the first place, it is a matter of common knowledge, and of course known to vendor-manufacturers, that most businesses are carried on by means of the assistance of employes and that equipment or supplies purchased by employers will in actual use be handled by the employes, who in this respect may be said to stand in the shoes of the employer. Moreover the term "privity" itself appears to be of uncertain origin and meaning and to have been developed by the courts and applied in various contexts. (See *Klein* v. *Duchess Sandwich Co., Ltd.* (1939), *supra*, 14 Cal.2d 272, 276-283 [2, 3]; 4 Corbin on Contracts, § 778; 33 Words and Phrases 799-822.) One of the customary definitions is that "privity" denotes mutual or successive relationship to the same thing or right of property; it implies succession. (See cases collected in

33 Words and Phrases 819-820.) ▆▆▆ Thus, in the present context, the employe had the successive right to the possession and use of the grinding wheel handed over to him by his purchaser-employer, and, we believe, should fairly be considered to be in privity to the vendor-manufacturer with respect to the implied warranties of fitness for use and of merchantable quality upon which recovery is here sought.

Amici curiae supporting defendant urge, however, that section 1735 of the Civil Code,[3] enacted in 1931, has been consistently interpreted by the courts in a manner opposed to plaintiff's position and contentions, and that failure of the Legislature to alter the previous judicial interpretation is indicative of legislative intent. (See *Cole* v. *Rush* (1955), 45 Cal.2d 345, 355 [8-9] [289 P.2d 450, 54 A.L.R.2d 1137].) However, as shown hereinabove, interpretation by California courts has not been as clear cut as amici curiae contend, and, further, the foodstuffs exception has been court developed in the interim. (*Klein* v. *Duchess Sandwich Co., Ltd.* (1939), *supra*, 14 Cal.2d 272, 276-283 [2, 3].)

### Negligence Count

Plaintiff further urges that the trial court erred in giving a certain instruction proposed by defendant on the negligence count on which trial was had. This instruction followed plaintiff's instruction on the doctrine of res ipsa loquitur. Although plaintiff does not point out any erroneous statement of law contained in the instruction of which he complains, he asserts generally that it was confusing, wordy, misleading, too broad, and incomprehensible to an inexpert group of jurors, gave undue prominence to the issue of overcoming the inference of neglect described in the standard res ipsa loquitur instructions, and nullified the effect of such prior instructions. Inasmuch as the lengthy instruction involved is the only instruction included in the record, no useful purpose would be served by setting it forth. ▆▆▆ It is elementary that instructions are to be considered as a whole (see *Coggins* v. *Hanchette* (1959), 52 Cal.2d 67, 75 [3] [338 P.2d 379]; 48 Cal.Jur.2d, 196-197, § 164), and in the absence from the record of the other instructions an appellate court is in no position to say that the particular instruction complained of was or was not prejudicial.

▆▆▆ Finally, plaintiff complains that the trial court erred in excluding evidence as to plaintiff's state of mind with

---

[3] See footnote 1, *supra*, p. 341.

reference to whether or not he reasonably believed that he was wearing safety glasses at the time of the accident. Defendant pleaded contributory negligence of plaintiff as a defense to the negligence count, and the exclusion of evidence to which plaintiff refers occurred during the examination of the witness Swerdfiger, who was a superintendent for plaintiff's employer, as follows:

"Q. By Mr. Center [plaintiff's attorney]: Isn't it a fact that Mr. Peterson when he came to work in your division did come in to you with the glasses that he was wearing, that you and he did look at them to determine whether you thought they were safety glasses? A. Not at the time of hire. Mr. Peterson was hired before I was superintendent of the company.

"Q. Maybe it was at the time you became superintendent . . . A. Sometime in that period of time prior to the accident, yes.

"Q. Didn't you agree with Mr. Peterson that they looked like safety glasses to you?"

The witness was not permitted to answer the last question, on objections that he was not qualified regarding glasses, no proper foundation had been laid, whether they looked like safety glasses to the witness or not would be immaterial to the issue of contributory negligence, and that his opinion would tend neither to prove nor to disprove such issue.

Plaintiff had previously been permitted, over defendant's objection, to testify that the glasses he was wearing at the time of the accident and which he had secured from the Navy were safety glasses "to the best of my knowledge," and to give the reasons for that belief. Since any testimony of Swerdfiger concerning a conversation between plaintiff and himself regarding the appearance of plaintiff's glasses would have been only cumulative evidence, its rejection under the circumstances does not appear to be prejudicial.

### Sufficiency of Evidence

In conclusion it may be mentioned that defendant argues that at the trial on the negligence count plaintiff failed to establish that the wheel which broke was one of those sold to his employer by this defendant, and that therefore plaintiff is not in a position to urge a reversal on any of the three contentions which he advances on appeal. Plaintiff, without supporting references to the record, asserts there was evidence tracing the course of the wheel from the time of its purchase

from defendant until it came to the burr bench at which plaintiff worked, and went to pieces when first used. However, since plaintiff's contention with respect to the demurrer to his cause of action based on implied warranty must be determined as a matter of law on the pleading without reference to evidence, and since his two contentions as to alleged error occurring at the trial on the negligence count have been determined adversely to him on other grounds, we need not reach defendant's assertions as to insufficiency of the evidence to establish its connection with the allegedly defective wheel.

The judgment is: (1) affirmed with respect to the first count, based on negligence; (2) reversed with respect to the second, or warranty, count; and (3) the cause is remanded to the superior court with directions to permit defendant (within such reasonable time as that court may fix) to file an answer or such other pleading or pleadings as defendant may elect.

Gibson, C. J., McComb, J., Peters, J., Dooling, J., and Duniway, J. pro tem.,* concurred.

TRAYNOR, J.—I concur in the judgment for the reasons set forth in my concurring opinions in *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 461-468 [150 P.2d 436] and *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 523-533 [203 P.2d 522].

---

*Assigned by Chairman of Judicial Council.