94 F.3d 651
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Glen JAMES; Doreth James, Plaintiffs-Appellants,
v.
SOUTHERN CALIFORNIA EDISON COMPANY; San Diego Gas &
Electric Company; Combustion Engineering, Inc.;
Does 1 Through 100, inclusive,
Defendants-Appellees.
 No. 95-56842.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 11, 1996.
Decided Aug. 15, 1996.
 
 1
 Before: GOODWIN and HAWKINS, Circuit Judges, and WARE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiffs-appellants Glen and Doreth James appeal the district court's entry of final judgment and its denial of plaintiffs' motion for a new trial following a jury verdict in favor of defendants-appellees Southern California Edison (SCE), San Diego Gas & Electric Company (SDG & E), and Combustion Engineering, Inc. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.
 
 
 4
 1. The district court's dismissal of plaintiffs' breach of implied warranty claim
 
 
 5
 Privity is generally a requirement for implied warranty claims under California law. Hauter v. Zogarts, 534 P.2d 377, 383, n. 8 (Cal.1975) (en banc); Rodrigues v. Campbell Indus., 151 Cal.Rptr. 90, 93 (Cal.Ct.App.1978) (citation omitted); Evraets v. Intermedics Intraocular, Inc., 34 Cal.Rptr.2d 852, 857 (Cal.Ct.App.1994) (citation omitted). Plaintiffs insist there is an exception to this requirement where the "instrumentality of injury is 'inherently dangerous,' " invoking Peterson v. Lamb Rubber Co., 353 P.2d 575, 580 (Cal.1960). Plaintiffs mischaracterize the principle articulated in Peterson. Peterson did not create an exception to the privity requirement but instead provided that under certain circumstances, privity extends to the employees of an employer who stands in privity with the manufacturer. Peterson explained that in cases where "equipment or supplies purchased by employers will in actual use be handled by the employes [sic]," the employees "in this respect may be said to stand in the shoes of the employer." Peterson, 353 P.2d at 581. Here, in contrast, James did not use or handle the fuel rods manufactured by defendant Combustion Engineering, and, moreover, was not an employee of the purchaser of the fuel rods, but instead was an employee of an independent contractor. Privity therefore did not extend to James. Cf. Alvarez v. Felker Mfg. Co., 41 Cal.Rptr. 514, 520 (Cal.Ct.App.1964) (privity extends from manufacturer to consumer where instrumentality is dangerous if defective or improperly used); Gutierrez v. Superior Court, 52 Cal.Rptr. 592, 604 (Cal.Ct.App.1966) (no privity between manufacturer of glass doors sold to hotel and hotel guest); Fundin v. Chicago Pneumatic Tool Co., 199 Cal.Rptr. 789, 793, n. 1 (Cal.Ct.App.1984) (recognizing that privity exists between seller and employee of employer that purchases materials from seller).
 
 
 6
 2. The district court's denial of plaintiffs' motion for a new trial
 
 
 7
 a. Juror misconduct
 
 
 8
 Relying chiefly on a post-trial declaration by one of the jurors, plaintiffs allege that juror misconduct during jury deliberations influenced the jury to enter a verdict for defendants. In evaluating allegations of juror misconduct, our threshold inquiry is whether the district court could properly consider the juror's declaration in denying plaintiffs' motion for a new trial. Federal Rule of Evidence 606(b) governs the admissibility of juror testimony regarding a verdict. It provides, in pertinent part:
 
 
 9
 Upon inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.
 
 
 10
 Fed.R.Evid. 606(b) (emphasis added).
 
 
 11
 Applying Fed.R.Evid. 606(b) here, we conclude that the district court properly disregarded the juror's declaration. We hold that the juror-declarant's statements describing the jury deliberations and the perceived mental processes of other jurors were inadmissible, since testimony with respect to such matters is expressly excluded by Fed.R.Evid. 606(b). We also conclude that the portion of the declaration recounting another juror's alleged statements about radiation and the burden of proof in the case was also beyond the proper scope of inquiry, since that testimony did not describe extraneous, "after-acquired information that potentially taints a jury verdict" but instead represented "the general knowledge, opinions, feelings and bias that every juror carries into the jury room." Hard v. Burlington N.R.R. Co., 870 F.2d 1454, 1461 (9th Cir.1989).
 
 
 12
 b. Improper remarks during closing arguments
 
 
 13
 Plaintiffs contend the verdict was the product of improper jury passion and prejudice stemming from defendants' counsel's allegedly inflammatory remarks during closing arguments. To warrant reversal on the basis of attorney misconduct, the "flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." Kehr v. Smith Barney, Harris Upham & Co., 736 F.2d 1283, 1286 (9th Cir.1984) (citation omitted).
 
 
 14
 Plaintiffs fail to show any specific attorney misconduct, much less that any such behavior "permeate[d] [the] entire proceeding." They offer only vague references to unspecified "personal attacks" on plaintiffs' counsel, along with the unsupported allegation that a "volatile atmosphere" followed the verdict in the O.J. Simpson trial, which was rendered during the course of the James trial. Our review of the record indicates that during his closing argument, defendants' attorney criticized plaintiffs' attorneys' presentation of their case, attacked the evidence offered by plaintiffs, and underscored the evidence defendants had presented. His conduct fell squarely within the bounds of proper closing argument, and did not impassion and prejudice the jury.
 
 
 15
 c. Weight of the evidence
 
 
 16
 Plaintiffs insist that the verdict was against the weight of the evidence presented at trial. We have adopted a stringent standard[1] for granting a new trial based on challenges to the weight of the evidence in a civil trial. In outlining the possible grounds for reversing a district court's denial of a motion for new trial based on a challenge to the weight of the evidence, we have cautioned:
 
 
 17
 As we cannot weigh the evidence for ourselves, we will reverse a denial of a new trial if we find one of [ ] four errors or if the record contains no evidence in support of the verdict.
 
 
 18
 Landes Construction Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1372 (9th Cir.1987) (emphasis added).
 
 Those four errors are:
 
 19
 (1) the trial court believes it lacks the power to grant a new trial;
 
 
 20
 (2) it concludes that it may not weigh the evidence;
 
 
 21
 (3) it weighs the evidence explicitly against the wrong standard, i.e., substantial evidence or preponderance of the evidence; or
 
 
 22
 (4) it concludes the verdict is against the clear weight of the evidence but refuses to grant a new trial.
 
 
 23
 Landes, 833 F.2d at 1372 (citations omitted).
 
 
 24
 Because none of those four errors occurred below, the sole basis on which we could find an abuse of discretion is if there was "no evidence in support of the verdict." That is not the case here.
 
 
 25
 At trial, defendants introduced evidence challenging James' allegation that he was exposed to dangerous levels of radiation while working at San Onofre Nuclear Generating Station ("SONGS"), and his allegation that such exposure caused his leukemia. First, defendants introduced evidence showing that James' radiation exposure was monitored throughout the period he worked at SONGS, and that his total exposure from working four years at the plant was 31 mrem, well below the permissible occupational dose limit under federal safety regulations (total effective dose of 5,000 mrem annually), see 10 C.F.R. § 20.1201(a)(1). Second, defendants introduced expert testimony that in 99% of the cases of myelogenous leukemia, cause is unknown. Finally, they introduced physiological data challenging James' expert's "macrophage theory" of causation. Because there was evidence in the record from which the jury could have concluded James failed to establish dangerous levels of exposure or defendants' liability, we may not reverse the district court's denial of plaintiffs' motion for a new trial.
 
 3. Evidentiary rulings
 
 26
 Plaintiffs challenge the district court's exclusion of the testimony of human factors expert Dr. Harry Snyder, which they claim was introduced to show "the work environment was unsafe" and defendants' safety warnings "did not adequately explain the danger" of radiation at SONGS. Plaintiffs' contention mischaracterizes the proferred evidence, which would not have refuted defendants' evidence of warnings but instead would have offered speculation as to whether James would have heeded additional radiation warnings. The district court did not abuse its discretion in excluding the evidence on the ground that the proferred testimony "involved conclusions on which the jury does not require expert testimony."
 
 
 27
 Plaintiffs next contend that the district court's exclusion of portions of a training manual on hot particles was improper because the manual constituted a party admission. The district court excluded much of the training manual as irrelevant because the manual was written in late 1987, more than a year after James last worked at SONGS. However, it admitted into evidence a portion of the manual that described the 1985 discovery of a hot particle on a worker's garment, which was later traced to failed fuel. We conclude that the district court did not abuse its discretion in excluding the later portion of the manual on the basis of relevance.
 
 
 28
 Finally, plaintiffs contend that the district court's admission of one of James' radiation exposure permits, which were required for entry into high-radiation areas at SONGS, constituted unfair surprise in light of defendants' failure to produce the permit during discovery. Despite defendants' eleventh-hour production of the permit, the district court admitted the permit into evidence because it was relevant evidence of James' exposure to high-radiation areas. However, the district court also took steps to cure the lateness of the production by allowing plaintiffs broad latitude in cross-examining defendants' witnesses with respect to their earlier failure to produce the permit. We conclude the district court's evidentiary ruling was not an abuse of discretion, in light of the free rein plaintiffs were given to challenge defendants' untimely production of the permit.
 
 
 29
 4. Refusal to instruct on exceptions to the "special employer" defense
 
 
 30
 Finally, plaintiffs challenge the district court's refusal to instruct the jury on the "fraudulent concealment" exception to the "special employment" doctrine, which provides that the existence of a "special employment" relationship renders worker's compensation the sole and exclusive remedy for work-related injuries. See Kowalski v. Shell Oil Co., 588 P.2d 811, 815 (Cal.1979) (en banc).
 
 
 31
 The district court properly rejected plaintiffs' proferred jury instruction because the existence of fraudulent concealment was simply not an issue at trial. James' leukemia was diagnosed several years after he had last worked at SONGS. Defendants could not have "aggravated" James' injury by "fraudulent concealment of [that] injury," as required by the "fraudulent concealment" exception, see Cal.Labor Code § 3602(b)(2), since defendants could not possibly have known about James' illness before it was diagnosed. The district court's refusal to instruct the jury as to the possibility of fraudulent concealment was therefore not an abuse of discretion.
 
 CONCLUSION
 
 32
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Plaintiffs misread Landes when they insist that "[a] new trial is required where the jury's verdict is clearly against the weight of the evidence[,]" and that, on appeal, we are "required to re-weigh the evidence, independently evaluate the credibility of witnesses, and may grant the motion even if substantial evidence supports the verdict." Cf. Landes, 833 F.2d at 1372